DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA INC.,**
Appellant,

v.

**BARBARA COHEN,** as personal representative
of the Estate of Rita Shifrin,
Appellee.

No. 4D21-467

[June 8, 2022]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. 062008CA000521AXXXCE.

Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, DC, Kenneth J. Reilly and Hassia T. Diolombi of Shook, Hardy & Bacon L.L.P., Miami, and Jennifer M. Voss of Shook, Hardy & Bacon L.L.P., Tampa, for appellant.

Jeffrey V. Mansell and Bard D. Rockenbach of Burlington and Rockenbach, P.A., West Palm Beach, and Scott P. Schlesinger, Jonathan R. Gdanski, and Brittany C. Barron of Schlesinger Law Offices, P.A., Fort Lauderdale, for appellee.

LEVINE, J.

Philip Morris appeals an award of $559,690 in attorneys' fees imposed as a sanction based on section 57.105(1) and *Moakley v. Smallwood*, 826 So. 2d 221 (Fla. 2002), after finding that several statements made by Philip Morris's counsel during opening statements were in bad faith. We find that the trial court erred by awarding attorneys' fees for the entire trial because "the amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney." *Moakley*, 826 So. 2d at 227. Since the trial court made "express finding[s] of bad faith conduct" by Philip Morris's counsel only as to the opening statement, and did not make the same "bad faith" determinations about other conduct during the trial, we find that the trial court failed to follow

the requirements of *Moakley* by demonstrating how the specific bad faith conduct in the beginning of the trial was directly related to all the plaintiff's attorneys' fees for the entire trial. Thus, as a result, we reverse the sanctions awarded by the trial court.[1] We also find the cross-appeal moot based on our reversal in the direct appeal.

The plaintiff, as personal representative of the decedent's estate, sought compensatory and punitive damages against Philip Morris for wrongful death. Philip Morris stipulated that the decedent was addicted to cigarettes, but disputed whether the decedent's addiction was a legal cause of her COPD, whether the COPD manifested prior to the November 21, 1996, deadline for filing *Engle*[2] progeny cases, and whether the decedent's COPD caused her death. Philip Morris also stipulated to trying phase 1 liability and phase 2 punitive damages together.

The trial court highlighted the following statements made by Philip Morris's counsel in opening in its order finding "bad faith." During opening statements, Philip Morris contrasted a 1993 radiology report containing the decedent's COPD diagnosis, which the plaintiff referenced in her opening, with a 1995 medical record from a different doctor that did not mention COPD. Philip Morris then told the jury that the plaintiff would not call the doctor who authored the 1993 report. Specifically, Philip Morris stated: "That was written by Dr. Fabian. Will they be bringing you that testimony about that one paragraph? No." The plaintiff objected, arguing that Philip Morris knew that Dr. Fabian was deceased. The trial court asked the plaintiff if she wanted a mistrial, and the plaintiff said no. The trial court sustained the objection and gave a curative instruction that the doctor had passed away and that both sides have equal access to subpoena witnesses.

Several times during opening, Philip Morris also characterized the plaintiff's case by referring to the plaintiff's "position" and "theory" of the case. For instance, Philip Morris stated: "One *theory* is that [the decedent] was defrauded and started smoking back in the '40s. . . . Another *theory* is that she would have quit smoking in time to avoid getting COPD if she had not relied on something Philip Morris said in a 1994 advertisement." (emphasis added). Philip Morris also suggested that "the plaintiff's *position*" is that "her primary care doctor[] just forgot" to include the plaintiff's COPD diagnosis in a 1995 medical record. (emphasis added). Another time, Philip Morris stated: "Can't or won't quit, that's the *position*

---

[1] As a result of the reversal of the sanctions, we need not address the other issues raised by Philip Morris in its brief.
[2] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

that the plaintiff took in 2010." (emphasis added).  The trial court sustained the plaintiff's objections.  At least twice, the trial court advised Philip Morris during sidebar to frame its opening statements in terms of what the evidence would show and not to talk about the plaintiff's position or frame the plaintiff's case.

Next, Philip Morris misrepresented that the plaintiff was seeking $81,000 in total compensatory damages, when in fact this figure came from the plaintiff's interrogatory answer for only loss of support and services.  Philip Morris stated, "And the interesting thing about compensatory damages in this claim is the plaintiff hasn't told us what she thinks all of her damages are."  The trial court sustained the plaintiff's objection.  Philip Morris continued, "When we ask the plaintiff what are the damages, we were told, 'Undetermined at this time.'"  The trial court again sustained the plaintiff's objection.  Philip Morris then stated, "18 months later.  That's what we were told her compensatory damages are."  At the time, Philip Morris was showing a slide with the amount of $81,000.

The plaintiff then asked the trial court for an order to show cause against counsel for violating the trial court's order and also requested a "provisional mistrial."  The trial court stated, "There's no provisional mistrial."  After stating that it was "speechless," the trial court sustained the objection, struck the comments about damages, and instructed Philip Morris to rephrase its statements.

Philip Morris moved on to discussing punitive damages, stating that "they are over and above whatever is awarded for compensatory damage, which is what we just talked about."  The plaintiff objected, complaining that Philip Morris again pointed to the $81,000 figure, misleading the jury.  The plaintiff moved to show cause why Philip Morris should not be in direct contempt.  The plaintiff stated that she "can't get a fair trial," but also stated that she did not want a mistrial.  The trial court recognized that Philip Morris was "directly violating my orders," but declined to hold counsel in contempt.  The trial court gave a curative instruction, striking the reference to the $81,000 being the plaintiff's compensatory claim.

Philip Morris next mentioned other lawsuits involving e-cigarettes.  Philip Morris stated, "Philip Morris can't be punished for any harm that JUUL caused other people."  Philip Morris continued, "And the evidence will be that people who are harmed by JUUL can and have brought their

3

own lawsuits against JUUL—"[3]  The plaintiff objected, asked the trial court to reserve ruling on a motion for mistrial, and again asked for a motion to show cause.  The trial court sustained the objection and gave a curative, advising the jury that other pending lawsuits should not affect its decision.  The trial court reserved ruling on "additional sanctions."  After a brief recess, the trial court then stated there would be entitlement to section 57.105 sanctions due to Philip Morris's conduct during its opening statement.

During deliberations, the jury sent a note that it could not get past question 1, which asked the jury to determine whether the decedent's addiction to cigarettes containing nicotine was a legal cause of her COPD which was manifested prior to November 21, 1996.  The trial court gave the jury an *Allen* charge.  After the jury again indicated it could not come to a consensus, the trial court then granted a directed verdict on question 1.

The next day, the jury sent another note indicating it was unable to agree on questions 2 and 3.  Question 2 asked the jury "whether [the decedent] reasonably relied to her detriment on a statement, concealment, or omission by Philip Morris USA, Inc. not otherwise known or available concerning the health effects and/or addictive nature of cigarettes and, if so, whether such reliance was a legal cause of her COPD and death."  Question 3 asked "whether [the decedent] reasonably relied to her detriment on an act or statement made in furtherance of defendant's agreement to conceal or omit material information not otherwise known concerning the health effects and/or addictive nature of cigarettes, and, if so, whether such reliance was a legal cause of her COPD and death."  After confirming the jury was unable to reach a verdict, the trial court declared a mistrial and dismissed the jury.

On March 9, 2020, the trial court entered a sanction order against Philip Morris, finding that Philip Morris's actions "*during opening* are in Bad Faith." (emphasis added).  The trial court further found that "the conduct was willful and deliberate" given the repeated violations of numerous rulings and instructions.  The order recounted Philip Morris's improper statements during opening: telling the jury that the plaintiff was not calling Dr. Fabian as a witness; continuing to characterize the plaintiff's case contrary to the court's instructions; informing the jury about other pending lawsuits for e-cigarettes; and mischaracterizing an

---

[3] In *Philip Morris USA, Inc. v. Rintoul*, No. 4D20-1963, 2022 WL 1482413 (Fla. 4th DCA May 11, 2022), evidence regarding JUUL was found to be inadmissible against Philip Morris.

interrogatory answer to make it appear as if the plaintiff was claiming $81,000 in total economic damages.

Although the trial court confined its finding of bad faith conduct entirely to the opening statement, the trial court also noted other instances of improper conduct during the trial, without finding those other acts to be in "bad faith." The trial court found that Philip Morris violated two pretrial rulings during cross-examination of a witness, misrepresented the record, improperly attacked counsel, and disrespected and attacked the court. The court imposed sanctions on Philip Morris under section 57.105(1) in lieu of contempt, reserving jurisdiction to determine the amount or type of sanctions.

During a March 10 sanction hearing, the plaintiff requested only an award of attorneys' fees for the entire trial. The plaintiff did not request fees for a portion of the trial, or specifically the time before or during the opening statement. During a subsequent evidentiary hearing on October 19 and 20, the plaintiff again argued she was entitled to attorneys' fees for the entire trial. The plaintiff's expert also testified that the trial court should award fees for the entirety of hours the plaintiff's counsel expended at trial. After the evidentiary hearing, the trial court entered a final sanction order, awarding the plaintiff attorneys' fees in the amount of $599,690 for the entire trial based on section 57.105(1) and *Moakley*. In determining this amount, the trial court refused to include fees for one of the plaintiff's attorneys whom the trial court found made improper closing arguments.

Philip Morris appeals. The plaintiff cross-appeals, challenging the trial court's reduction of the fee award based on improper closing arguments by her attorney.

"The standard of review of an order granting sanctions for attorney misconduct is abuse of discretion." *Rivero v. Meister*, 46 So. 3d 1161, 1163 (Fla. 4th DCA 2010). "However, to the extent a trial court's order on attorney's fees is based on its interpretation of the law, we have de novo review." *Ferere v. Shure,* 65 So. 3d 1141, 1144 (Fla. 4th DCA 2011).

The attorneys' fees sanction in this case cannot be upheld under either section 57.105(1) or *Moakley*, the two grounds identified by the trial court as the basis for the fee award. Initially, the trial court's reliance on section 57.105(1) would be inapplicable. Section 57.105 provides:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including

5

prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

(a) Was not supported by the material facts necessary to establish the claim or defense; or

(b) Would not be supported by the application of then-existing law to those material facts.

. . . .

(4) A motion by a party seeking sanctions under this section must be served but may not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

"The central purpose of section 57.105 is. . . to deter meritless *filings*." *Davis v. Bailynson*, 268 So. 3d 762, 769 (Fla. 4th DCA 2019) (citation omitted). The instant case did not involve a meritless filing, but rather bad faith statements by Philip Morris in opening. Additionally, fees cannot be awarded under section 57.105(1) without complying with the twenty-one-day notice provision set forth in section 57.105(4). Here, there was no motion for sanctions under section 57.105(4) and no way for Philip Morris to "withdraw[] or appropriately correct[]" statements made in opening. *See* § 57.105(4), Fla. Stat.; *Ferere*, 65 So. 3d at 1144 (reversing section 57.105(1) attorney's fees where plaintiff's counsel alleged the "doctoring of records" during jury selection and there was no way for counsel to withdraw or appropriately correct that allegation).

The sanction also cannot be upheld under *Moakley*. Philip Morris argues that its alleged misconduct did not cause the plaintiff to lose the entirety of her trial fees. Philip Morris argues that the issues constituting the bad faith conduct earlier in the trial did not relate to the issues on which the jury subsequently hung. Additionally, Philip Morris points out that the opening statement occurred three weeks prior to the jury not reaching a verdict, and there was a ten-day hiatus in deliberations due to juror illness, which further extended the temporal relationship between the bad faith conduct, as determined by the trial court, and the resulting

6

mistrial due to the jury's inability to reach a verdict.

The plaintiff states that the trial court is in the best position to determine the impact of improper arguments. *USAA Cas. Ins. Co. v. Howell*, 901 So. 2d 876, 879 (Fla. 4th DCA 2005). Although the trial court is indeed in the best position to observe the impact of arguments, that position does not relieve the trial court from pointing out specifically how the bad faith conduct is directly related to the sanctions, especially in this case where the trial court sanctioned Philip Morris for attorneys' fees for the entire trial.

An award of fees as a sanction "must be *directly related* to the attorneys' fees and costs that the opposing party has incurred as a result of the *specific bad faith conduct* of the attorney." *Moakley*, 826 So. 2d at 227 (emphasis added). In *Moakley,* the Florida Supreme Court concluded "that the trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." *Id.* The court went on further to require that the finding of bad faith conduct "must be predicated on a high degree of specificity in the factual findings." *Id.*

The sanction imposed in the present case cannot be upheld under *Moakley* because the trial court's only findings of bad faith conduct related to what occurred in opening statement. The trial court did not make findings of bad faith as to other various incidents interspersed later in the trial. However, even if the trial court had made such findings—which it did not—that still would not satisfy *Moakley's* requirement. *Moakley* requires an express finding of bad faith, which is "directly related" to the award of attorneys' fees. *Id.* The trial court did not demonstrate how the attorneys' fees for the entire trial were "directly related" to the bad faith conduct in the opening statement, or for that matter, the various other items highlighted by the trial court. Thus, the trial court's findings fail to satisfy both key components of *Moakley* relating to the attorneys' fees for the entire trial. *See Cousins v. Duprey*, 325 So. 3d 61, 75 (Fla. 4th DCA 2021) (reversing where the sanctions award was not "directly related to the alleged sanctionable conduct"); *Bennett v. Berges,* 50 So. 3d 1154, 1160 (Fla. 4th DCA 2010) (reversing where "the trial court awarded fees that were not directly related to the specific bad faith conduct of appellants"); *Finol v. Finol*, 912 So. 2d 627, 629 (Fla. 4th DCA 2005) (granting petition for certiorari where "[t]he record and the order also fail to show how the fees awarded directly relate to the fees incurred as a result of the alleged bad faith conduct"); *Heiny v. Heiny*, 113 So. 3d 897, 903 (Fla. 2d DCA

2013) (reversing where "the entirety of the wife's legal fees could not have been the direct result of the husband's misconduct").

Further, none of the arguments that the trial court found to be made in bad faith directly related to the questions the jury hung on. As to question 1, the trial court directed a verdict. Thus, the jury effectively hung on only questions 2 and 3, which related to concealment and reliance. However, the bad faith arguments in opening had nothing to do with concealment and reliance. Rather, the bad faith arguments in opening related to the plaintiff not calling her doctor witness, characterizing the plaintiff's case, other pending lawsuits for e-cigarettes, and misrepresenting that the plaintiff sought $81,000 in total economic damages. Even the additional conduct the trial court found to be improper—without the required express finding of bad faith conduct—did not relate to questions 2 and 3. Additionally, the trial court issued curative instructions following the objectionable opening statements. It is well-established that a jury is presumed to follow a trial court's instructions. *R.J. Reynolds Tobacco Co. v. Thomas*, 264 So. 3d 199, 202 (Fla. 4th DCA 2019). The record simply does not support a finding that Philip Morris's opening statements tainted the entire trial and caused the jury to hang on questions 2 and 3.

As Philip Morris points out, it is impossible to know why the jury hung. It is possible the jury could not reach a verdict simply because of a conflict in the evidence. Alternatively, the plaintiff's own closing arguments could have played a role in the jury's inability to reach a verdict inasmuch as the trial court found that the plaintiff's attorney had made improper closing arguments. *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1026 (9th Cir. 2011) (reversing award of attorney's fees for entire trial as a sanction where record did not support a finding that closing argument caused jury to hang).

*Moakley* sanctions are to be awarded for specific instances of bad faith conduct which are directly related to the amount of fees incurred. For instance, in *Patsy v. Patsy*, 666 So. 2d 1045, 1046 (Fla. 4th DCA 1996), this court affirmed an award of $1,870 in attorney's fees for filing a sham motion with no factual basis solely to delay the proceedings. In *Bennett*, this court found a $12,500 fee award "excessive based upon the extent of the sanctionable conduct." 50 So. 3d at 1160. Instead, "[t]he fee award should have been limited to the narrow circumstance of the appellants' failure to come forward with proof of their allegation of theft at the January 2009 hearing." *Id.* *See also Moakley*, 826 So. 2d at 223 (recognizing the trial court's inherent authority to award $1,125 in attorneys' fees as compensation for the time the opposing party expended in responding to

a subpoena, but reversing based on the absence of an express finding of bad faith).

Of course, we are not saying that attorneys' fees can never be awarded as a sanction for the entire trial. In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 51 (1991), the Supreme Court affirmed a $1 million award of attorney's fees for the cost of litigation where the defendant's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court . . . ." However, unlike in *Chambers,* this is not a case where Philip Morris's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court." *Id.* Rather, the trial court made specific findings of bad faith that were limited to Philip Morris's comments in opening statements. *See Tenev v. Thurston,* 198 So. 3d 798, 802 (Fla. 2d DCA 2016) (reversing an award of attorneys' fees for the entire trial where the "only detailed factual finding of bad faith on the part of [the defendant]—the dishonest statements to the court—did not warrant a mistrial").

Further, when the trial court asked the plaintiff whether she wanted to request a mistrial during opening statements, the plaintiff declined and maintained that she did not want a mistrial. When the plaintiff proceeded with the trial and rejected the offers of mistrial from the trial court, the plaintiff then proceeded at her own peril by not availing herself of a mistrial. Consequently, had the plaintiff accepted the offer of a mistrial, then she would have at least mitigated some of the attorneys' fees incurred by her at trial. Instead, as a result of the plaintiff's strategic decision, the amount of attorneys' fees incurred by the plaintiff dramatically increased. *See United States v. Carter,* 45 Fed. Appx. 339, 347-48 (6th Cir. 2002) (finding waiver where defendant made a strategic decision and refused court's offer to declare a mistrial). A plaintiff who elects to proceed with the trial, declines a mistrial, and then does not get the result she wants, may not complain about not receiving attorneys' fees as a sanction for the entirety of the trial.

This case would have been different if, for example, immediately following the objectionable opening statements, the plaintiff had moved for a mistrial, and the trial court had granted the motion. In such a scenario, an award of attorneys' fees would have been directly related to the bad faith misconduct. *See Lasar v. Ford Motor Co.,* 399 F.3d 1101, 1113 (9th Cir. 2005) (affirming award of $63,397.50 in attorney's fees as a sanction where trial court granted a mistrial after defendant's opening statements violated two limine rulings).

It is important to note that the trial court only ruled specifically on the

plaintiff's request for an award of attorneys' fees for the entire trial, made at the March 10, 2020 sanction hearing as well as at the evidentiary hearing held on October 19 and 20, 2020.  Additionally, the plaintiff's expert witness testified that the trial court should award attorneys' fees for the entirety of hours the plaintiff's counsel expended at trial.  Significantly, the plaintiff never requested or sought a lesser portion of attorneys' fees.  Instead, she sought fees only for the entire trial.  Even on appeal, the plaintiff does not advocate for partial attorneys' fees.

"The prohibition against proverbial multiple 'bites at the apple' for trials remains firmly rooted as the leading, guiding principle to govern the scope of remand and should serve as the default direction when these kinds of decisions are being made."  *Morales v. Fifth Third Bank*, 275 So. 3d 197, 201 (Fla. 4th DCA 2019) (citation omitted).  "The party failing to establish its attorney's fees claim is not entitled to a second opportunity to make the requisite showing."  *Warner v. Warner*, 692 So. 2d 266, 268 (Fla. 5th DCA 1997).  By only requesting fees for the entire trial, the plaintiff has not sought fees that were "directly related" to the trial court's finding of bad faith, such as the attorneys' fees incurred prior to and during the opening statement.  Therefore, we cannot now award attorneys' fees for that part of the trial where the trial court found bad faith conduct.

We also note that the facts of cases like the present one, in principle, were a concern of then Chief Justice Wells at the time of the issuance of *Moakley*.  Chief Justice Wells listed a host of potential issues in his concurrence in result only, including the following: "The majority likewise does not set any limits on the monetary sanctions which the trial court can impose."  826 So. 2d at 228.  He further stated that "[f]rankly, I am concerned about arbitrary or intimidating applications of undefined and unlimited 'bad faith' sanctions."  *Id.* at 229.  Chief Justice Wells's concerns appear to be prophetic.  This case demonstrates an example of where "undefined and unlimited" sanctions are being issued.  Without clear definitions and findings of specific bad faith conduct "directly related" to the award of attorneys' fees as a sanction, the sanction has become "arbitrary" and "intimidating."  *Id.*

Finally, we note that there were other remedies available to the plaintiff and the trial court.  The plaintiff could have accepted the multiple offers by the trial court to grant a mistrial.  Although we appreciate there may be strategic reasons to demur, that is still a decision that the plaintiff makes and lives with.  Further, a trial court could refer to the Florida Bar any examples of specific bad faith conduct.  *See generally* R. Regulating Fla. Bar Ch. 4; *see also* Fla. Code of Jud. Conduct, Canon 3D.  There are potential contempt powers that may be applicable in certain limited cases.

*See* § 38.22, Fla. Stat. (recognizing a court's statutory power to punish contempt); *Ex parte Earman*, 95 So. 755, 760 (Fla. 1923) (recognizing a court's inherent power to punish contempt). Of course, there remains the inherent authority of the trial court to award attorneys' fees under *Moakley*. However, that remains viable only when utilized under the specific requirements of that case. Since the trial court did not follow the clear dictates of *Moakley*, we reverse.

In summary, we find the sanction did not follow the requirements of *Moakley* because the award of attorneys' fees for the entire trial was not directly related to the findings of bad faith conduct that occurred during opening statement. As such, we reverse. Because we reverse the sanctions award, the cross-appeal challenging the reduction in recoverable attorneys' fees is moot and therefore dismissed.

*Reversed; cross-appeal dismissed as moot.*

FORST and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

11