RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0067P (6th Cir.)
File Name: 01a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

DEXTER A. JOHNSON,
    *Defendant-Appellant.*

No. 99-6622

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 99-10042—James D. Todd, District Judge.

Argued: February 1, 2001

Decided and Filed: March 9, 2001

Before: GUY, NORRIS, and SILER, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Ralph A. Sivilla, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. John T. Fowlkes, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Ralph A. Sivilla, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. John T. Fowlkes,

1

ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

─────────────

**OPINION**

─────────────

ALAN E. NORRIS, Circuit Judge.  Defendant Dexter A. Johnson entered into a conditional guilty plea to one count of drug trafficking in violation of 21 U.S.C. § 841(a) (possession with intent to distribute).  The plea agreement preserved his right to appeal the denial of his motion to suppress evidence seized in the course of a routine traffic stop.  In order to resolve the question raised by the appeal, we must apply the holding of *Whren v. United States*, 517 U.S. 806 (1996), in the context of the motor vehicle laws of Tennessee, specifically Tenn. Code Ann. § 55-9-402 (lights required on motor vehicles).  In light of *Whren*, we conclude that the police officers who initiated the traffic stop had probable cause to believe that defendant had violated the Tennesssee statute at issue.  We therefore affirm the judgment of the district court.

On February 19, 1993, two officers of the Jackson, Tennessee police department were patrolling an area of the city where drug trafficking had been reported.  In the course of their surveillance, they noticed an automobile driven by defendant circling in the area.  They then observed that the vehicle had a broken taillight.  Rather than pull the car over immediately, the officers followed it for approximately two miles before initiating the stop.

Officer James Springfield testitified that he and his partner then approached the car and informed the driver, defendant Johnson, that "he had been stopped on a traffic violation of a busted taillight."  According to Officer Springfield, "[b]efore I could even ask [defendant] for his license, he started reaching down in the console area of his vehicle."  For safety reasons, the officer instructed defendant to step out of his car.

A subsequent check of defendant's driver's license revealed that it had been suspended. According to Officer Springfield, defendant "acted real nervous" when told that he would be placed under arrest; he also moved in a manner "as if he was trying to conceal something." A pat-down revealed crack cocaine in defendant's pocket; marijuana was found in the trunk of the car.

In addition to the testimony of Officer Springfield, photographs of the broken taillight were introduced during the suppression hearing and were reviewed by the district court, which characterized them in these terms:

> [C]ollective exhibit 1 clearly shows a broken taillight on the driver's side of this vehicle. Now, counsel has called it a cracked taillight, but this is more than a crack. This is a broken taillight with a piece of the red plastic missing.

The court then considered whether the officers had probable cause to stop a car with "a hole that big" in a taillight. After concluding that the officers had a reasonable basis to stop the vehicle, the court upheld the constitutionality of the subsequent search and seizure, relying upon *Whren* and *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993) (en banc).

When considering the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). A factual finding will only be clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993). Moreover, the evidence must be reviewed "in the light most likely to support the district court's decision." *Navarro-Camacho*, 186 F.3d at 705 (quoting *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir.), *cert. denied*, 513 U.S. 907 (1994)).

In *Whren*, the Supreme Court set the standard that governs this case: "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. Moreover, whether a traffic stop is reasonable does not depend upon the motivation of the officers. *Id.* at 813.

Although decided before *Whren*, this court has adopted a position on the legality of traffic stops in harmony with that later set out by the Supreme Court:

We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.

We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made the stop. Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop. If an officer testifies at a suppression hearing that he in fact did not see the traffic violation or did not have probable cause to

believe a violation had occurred, but only discovered after the stop or the arrest that the suspect had committed a traffic violation, a court could not find that probable cause existed. Such a stop would be unreasonable under the Fourth Amendment. Conversely, if the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.

*Ferguson,* 8 F.3d at 391 (internal citations omitted).

Tennessee Code Annotated § 55-9-402(c) provides, "Each lamp and stoplight required in this section shall be in good condition and operational." Defendant cites no Tennessee authority defining the term "good condition" in this context. As the district court noted, in resolving the legitimacy of defendant's motion to suppress, the question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred. The district court concluded that the hole in defendant's taillight was significant, which is a factual finding that we review for clear error. Applying the facts established by the district court to the Tennessee statute in question, we hold that the officers had probable cause to believe that the condition of the taillight violated the statutory requirement that it be "in good condition." Accordingly, the decision to stop the vehicle did not violate defendant's Fourth Amendment right to be free of unreasonable search and seizure.[1]

The judgment of the district court is **affirmed**.

---

[1] We note that defendant does not challenge the search of his person or vehicle conducted after the intitial traffic stop. Rather, the sole argument raised in his brief is that, because the intitial stop violated the Fourth Amendment, the evidence subsequently seized by the officers must be suppressed.