**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Charles D. CARLTON, Defendant–Appellant.**

No. 00–6718.

United States Court of Appeals, Sixth Circuit.

Aug. 14, 2002.

Before KEITH, MOORE, and GILMAN, Circuit Judges.

**OPINION**

MOORE, Circuit Judge.

Defendant–Appellant Charles D. Carlton ("Carlton") appeals his conviction following a conditional guilty plea to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

He claims that the district court erroneously denied his motion to suppress evidence that was obtained after he was stopped for erratic driving. Because the district court did not err in holding that the stop and search of Carlton's automobile were reasonable, we **AFFIRM** the denial of the suppression motion.

## I

On November 11, 1999, between 12:30 and 1 a.m., Kenneth Jones ("Jones"), a narcotics investigator for the Milan Police Department, observed a vehicle weaving from side to side on Wahl Street and Gann Road.[1] After Jones pulled the car over, he detected a strong ammonia-like smell emanating from the vehicle that intensified as he approached Carlton, the driver, and asked him to lower his window. Jones observed that Carlton had "very bloodshot" eyes and spoke "sort of like with a thick tongue, sort of like he had the cotton mouth," which, in Jones's experience, was consistent with someone under the influence of marijuana or otherwise impaired. Joint Appendix ("J.A.") at 68–69. Exiting the vehicle as directed, Carlton denied Jones's suggestion of alcohol consumption but stated that he had smoked marijuana before being stopped. Jones decided that this statement obviated any need for a field sobriety test and placed Carlton under arrest for driving while impaired.

In the subsequent search of Carlton's person, Jones found an instrument used to consume drugs, which prompted him to ask if Carlton had any weapons or drugs in his vehicle. When Carlton responded with general statements about how drugs had ruined his life, Jones read Carlton his *Miranda* rights. Carlton then informed Jones that there was methamphetamine in a field jacket in the passenger compartment and a bag filled with drugs near the driver's seat. After placing Carlton in a patrol car, Jones frisked passengers Mark Carlton ("Mark") and David Dunn ("Dunn"), found instruments used to consume drugs, and placed them under arrest. Before transporting Carlton, Mark, and Dunn to the Milan Police Department, Jones searched the vehicle and found more methamphetamine.

On April 17, 2000, a federal grand jury in the Western District of Tennessee indicted Carlton on one count of attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On May 22, 2000, Carlton entered a plea of not guilty to both counts. On July 14, 2000, Carlton moved to suppress the evidence that had been obtained during the November 11, 1999, search of his vehicle. After holding an evidentiary hearing on July 31, 2000, the district court credited Jones's testimony and denied Carlton's motion to suppress.

On August 7, 2000, Carlton entered a conditional plea of guilty to the charge of possession with intent to distribute methamphetamine; he reserved the right to appeal the district court's denial of his suppression motion. The other charge was dismissed at sentencing. On November 28, 2000, the district court sentenced Carlton to 96 months' imprisonment and a four-year term of supervised release; it

---

1. At the time, Jones was "out doing narcotics interdiction," which he described as follows: You look for PC, or probable cause, for a vehicle stop. And if you get your PC or feel somebody does something to give you probable cause to pull a vehicle over, you pull a vehicle over and conduct interviews. And if you can build on your case from there, you do. If you don't, then you let your driver continue on.

   Joint Appendix ("J.A.") at 76–77.

also ordered a special assessment of $100. This timely appeal followed.

## II

With respect to the denial of a motion to suppress, we review the district court's legal conclusions de novo and factual findings for clear error. *United States v. Johnson*, 242 F.3d 707, 709 (6th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 145, 151 L.Ed.2d 96 (2001). We view the evidence "in the light most likely to support the district court's decision" and accept its factual findings unless we have a "definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). Moreover, because the district court is best positioned to determine credibility, we defer to its credibility assessments. *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir.1999), *cert. denied*, 528 U.S. 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000).

### A

Carlton argues that he was stopped on pretext, because (1) Jones did not pull him over when he first saw him allegedly weaving on Wahl Street, which is marked with a center line, and (2) Jones pulled him over for weaving on Gann Road, which does not have visible center or shoulder lines. At the suppression hearing, Carlton and his passengers denied that Carlton had been impaired or driving erratically when stopped by Jones; Carlton also testified that he "usually tend[s] to go to the middle of a tar chip road like [Gann Road] because of the rough sides on either side of the road." J.A. at 129–30.

The Fourth Amendment's protection against unreasonable searches and seizures applies when a police officer stops a

vehicle and detains its occupants. *See United States v. Freeman*, 209 F.3d 464, 466 (6th Cir.2000). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," regardless of the police officer's actual motivation. *Johnson*, 242 F.3d at 709 (quoting *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

In this case, Jones stopped Carlton after he had weaved from side to side at least three times on both Wahl Street and Gann Road.[2] This erratic driving suggested that Carlton was driving while impaired, in violation of Tennessee Code § 55–10–418. We have previously held on similar facts that there was probable cause for the stop. *See, e.g., United States v. Palomino*, 100 F.3d 446, 448 (6th Cir.1996); *United States v. French*, 974 F.2d 687, 691 (6th Cir.1992), *cert. denied*, 506 U.S. 1066, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993); *cf. Freeman*, 209 F.3d at 466 (holding that probable cause did not arise from "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time"). Therefore, unless the district court committed clear error in finding that Carlton drove erratically before the stop, we will affirm the denial of the suppression motion.

In concluding that Jones had probable cause to stop Carlton, the district court expressly credited Jones's testimony. It first explained that Carlton was not credible because his "manner and demeanor while testifying" indicated an intent "to be very specific and very precise with his answer and his splitting of hairs and defining of words." J.A. at 143–44. The district court also discredited the conflicting

---

**2.** The fact that Jones did not stop Carlton immediately is not legally dispositive. *Cf.*

*Johnson*, 242 F.3d at 708.

testimony of Mark and Dunn, who gave "entirely different accounts" of Jones's first question to them. J.A. at 144. The district court then found that Carlton had in fact driven erratically when stopped by Jones because (1) Carlton admitted that he had used marijuana before the stop, (2) Dunn testified that Carlton had used methamphetamine before the stop, and (3) Carlton had a methamphetamine straw in his pocket.

■ We defer to the district court's credibility determinations and hold that it did not clearly err in finding that Carlton drove erratically. This finding means that Jones had probable cause to believe that a traffic violation had occurred and that his decision to stop Carlton was reasonable.

### B

■ Carlton argues that the search of his vehicle was unreasonable because (1) Jones lacked probable cause for the stop and subsequent search or (2) the search exceeded the proper scope of a search incident to arrest. As discussed above, Jones had probable cause to stop Carlton. He also had probable cause to arrest Carlton, given Carlton's admission that he had smoked marijuana before being stopped. *See United States v. Martin,* 289 F.3d 392, 400 (6th Cir.2002) ("The threshold for probable cause is based upon factual and practical considerations of everyday life that could lead a reasonable person to believe that there is a probability that an illegal act has occurred or is about to occur." (quotation omitted)). Carlton remonstrates that "Jones never asked [him] how much earlier he smoked the marijuana" or "ma[de] a clear factual determination of whether [he] was under the influence." Appellant's Br. at 14–15. We understand Carlton's indignance, but we think that Jones could reasonably infer from the situation and Carlton's answer

that Carlton had probably been driving while impaired. Jones thus had probable cause to arrest Carlton.

■ Accordingly, we hold that the search of Carlton's vehicle was reasonable as a search incident to arrest. Carlton was arrested while driving an automobile. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (footnotes omitted); *Martin,* 289 F.3d at 399. We have previously characterized the holding in *Belton* as a "bright-line rule." *United States v. Hudgins,* 52 F.3d 115, 119 (6th Cir.), *cert. denied,* 516 U.S. 891, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995); *cf. id.* (requiring "a case-by-case analysis of the reasonableness of the search" when a police officer initiates contact with a defendant after "the defendant has voluntarily exited the automobile and begun walking away"). Under *Hudgins,* the fact that Carlton and his passengers were handcuffed and thus unable to destroy evidence or harm Jones is not constitutionally significant. *See id.* Because Jones searched Carlton's vehicle incident to the lawful arrest of Carlton and his passengers, the district court did not err in denying the suppression motion.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.