**UNITED STATES of America,**
Plaintiff,

v.

**Leon Delshawn WILLIAMS,**
Defendant.

No. CRIM 04–50051.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 23, 2004.

Federal Defender, Federal Defender Office (Flint), Kenneth R. Sasse, Legal Aid and Defender Association (Saginaw), Flint, MI, for Leon Delshawn Williams, Defendants.

Robert W. Haviland, U.S. Attorney's Office (Flint), Flint, MI, for USA, Plaintiff.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

GADOLA, District Judge.

Before the Court is Defendant's motion to suppress evidence, filed on September 14, 2004. The Court held a hearing on the motion on October 25, 2004. The Court took the motion under advisement to allow the parties to file supplemental briefing on a further issue raised at the hearing. For the reasons set out below, the Court will deny Defendant's motion.

## I. BACKGROUND

Defendant is charged in a two count indictment with felon in possession of a firearm, and possession with intent to distribute marijuana. Both the firearm and the marijuana were seized from Defendant's vehicle in a traffic stop by Livingston County Sheriff's Department officers on July 15, 2004. Defendant has moved to suppress all evidence, and derivative evidence, obtained as a result of that stop.

At approximately one o'clock in the morning, two Livingston County Sheriff Department Officers, Deputy Marino and Sergeant Hudecek, observed Defendant's vehicle erratically swerving outside its lane of traffic as it proceeded west-bound along interstate I–96 near Howell, Michigan. The officers observed Defendant's car swerve several times, even as other cars were passing it. A search of the Law Enforcement Information Network for Defendant's license plate number informed the officers that the car was registered to Michael Norris. The officers decided to stop the vehicle to investigate whether Defendant was driving under the influence.

Once stopped, Deputy Marino asked Defendant to produce his license, registration, and proof of insurance. Defendant produced all three items, each in the name of Michael Norris. The officer then asked Defendant where his destination was. Defendant responded that he was going to Grand Rapids, Michigan, to see his girlfriend and that he had to return to Detroit to work later that morning at 10:00 or 12:00 p.m; such a trip would leave Defendant little time to visit his girlfriend before he would have to return. While Deputy

Marino was questioning Defendant, Sergeant Hudecek advised Deputy Marino that he had observed a box of empty sandwich bags in the passenger compartment of the vehicle. Deputy Marino found this, and Defendant's answers, suspicious and so asked Defendant if there was anything illegal in the vehicle, such as drugs, narcotics, alcohol, or weapons. Defendant answered that there was not. Throughout the investigation, the officers detected no sign that Defendant had been drinking or that he was under the influence of any intoxicant.

Deputy Marino then asked Defendant for permission to search the vehicle. Defendant consented to the search, but wanted to remain in the driver's seat while the search was conducted. Deputy Marino advised Defendant that he could not search the vehicle with him sitting in the driver's seat, and that he needed to exit the vehicle. Defendant then exited the vehicle and proceeded to the rear of the vehicle where Deputy Marino patted him down for weapons. Deputy Marino then asked Defendant a second time if he could search the vehicle, stating that the decision was up to Defendant. Defendant consented again.

While Deputy Marino searched the vehicle, Sergeant Hudecek watched Defendant. Being concerned for Defendant's safety, because they were standing on a freeway, Sergeant Hudecek asked Defendant if he would have a seat in the back of the patrol car. Defendant agreed and did so.

The search resulted in the discovery of marijuana in the dashboard center vent, which in turn resulted in Defendant's arrest for possession of marijuana. After the vehicle was taken back to the Sheriff's Department, the officers discovered additional marijuana and a 9mm pistol in the trunk. A check of Defendant's fingerprints identified Defendant as Leon Williams, not Michael Norris.

Defendant asserts that the police lacked probable cause to make the initial stop, that Defendant did not consent to any search of his vehicle, and that police lacked reasonable suspicion to further detain Defendant once they were satisfied that Defendant was not under the influence of intoxicants.

## II. Analysis

### A. Initial stop.

██ The Fourth Amendment prohibits only unreasonable searches or seizures. If a search is conducted without a warrant, as it was here, it is considered *per se* unreasonable, unless it fits into one of the established exceptions. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Government has the burden of proving the applicability of a Fourth Amendment warrant exception to the search or seizure in question. *See United States v. Haynes*, 301 F.3d 669, 677 (6th Cir.2002) ("The Government has the burden of proof to justify a warrantless search.").

██ When an officer stops a vehicle for a traffic violation, he must have probable cause. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). So long as an officer has probable cause to believe that a traffic violation has occurred, the resulting stop is not a violation of the Fourth Amendment even if it pretextual; the officer's motive is irrelevant. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993). However, not every minuscule violation of the law will constitute probable cause. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir.2000) (single isolated incident of motor home partially weaving into emergency lane for a few feet and an instant in time did not amount to failure to keep the vehicle within a single lane as nearly as practi-

cable, in violation of Tennessee law, and thus did not establish probable cause of a traffic violation that would warrant invasion of occupants' Fourth Amendment rights via a traffic stop.). *Cf. United States v. Johnson*, 242 F.3d 707, 709 (6th Cir.2002) (where a hole in defendant's taillight was significant, officers had probable cause to believe that the condition of the taillight violated the Tennessee statutory requirement that a taillight be "in good condition," and thus the decision to stop the vehicle did not violate defendant's Fourth Amendment right to be free of unreasonable search and seizure.).

■ Here, the officers' initial stop of Defendant's vehicle was not a violation of the Fourth Amendment based on the officers probable cause to suspect that Defendant was driving under the influence. Defendant's car was observed crossing over the dotted line several times, despite the surrounding traffic.

**B. Defendant's consent.**

■ When the government seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was freely and voluntarily given. Consent cannot be the result of coercion, force, or threat of force, explicit or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Mere acquiescence to a claim of lawful authority is not enough; nor is consent based on a false representation of a valid search warranted, or other similar trick. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Consent to search must be proved by clear and positive testimony and must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion. *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir.1977).

■ Here, Defendant freely and voluntarily consented to the search of his vehicle. There is no indication that the consent was a result of coercion, force, or threat of force, explicit or implied. Defendant's request to remain in the vehicle while the search was performed did not constitute a condition such that his consent was limited. Once Defendant was advised that his wish to remain in the vehicle and the officer's ability to search the vehicle were mutually exclusive, Defendant voluntarily exited the vehicle. Moreover, after being checked for weapons, Defendant consented to the search a second time.

**C. Further Detention**

Defendant contends that once the officers were satisfied that the Defendant was not intoxicated, they could not further detain Defendant unless they had reasonable suspicion of further criminal activity. *See United States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995). He argues that Deputy Marino's continued questioning and request for consent constituted an impermissible seizure in violation of the Fourth Amendment, because a reasonable person in Defendant's circumstances would not feel free to ignore the officers and go about his way. *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

In support of this argument, Defendant relies on *United States v. Richardson*, 385 F.3d 625 (6th Cir.2004). In *Richardson*, the officer requested that the driver remain behind the vehicle, to allow the officer to ask the passenger whether the vehicle contained any contraband or could be searched. *Id.* at 628. The Sixth Circuit held that the officer's request was a seizure, and since the officer lacked reasonable suspicion of criminal activity, the seizure was a violation of the Fourth Amendment. *Id.* at 630–31. Also, a de-

tention of the driver amounted to a detention of the passengers. *Id.* at 630. The Sixth held so, despite the fact that the officer never displayed an intimidating demeanor or used coercive language; a reasonable person in the driver's position would not feel free to ignore the officer's request and walk away. *Id.*

■ Defendant is correct that the officers lacked any reasonable suspicion of criminal activity. Defendant showed no signs of intoxication, and the name on his license, registration, and proof of insurance matched the name in the law enforcement database. Furthermore, neither Defendant's late night trip nor his possession of empty sandwich bags supplied the officers with reasonable suspicion. *See Richardson*, 385 F.3d at 630 (holding that nervousness on the part of the driver and passengers plus conflicting travel plans do not add up to reasonable suspicion).

Defendant, however, is incorrect that the officers' further detention of Defendant was an unreasonable seizure. In *United States v. Erwin*, 155 F.3d 818 (6th Cir.1998), the Sixth Circuit held that continued questioning, including a request for consent to search one's vehicle, is permissible, regardless of whether reasonable suspicion exists:

> Moreover, irrespective of whether the deputies were justified in detaining [the defendant] after he showed no signs of intoxication, and even if they had not, after approaching [the defendant], observed conditions raising reasonable and articulable suspicion that criminal activity was "afoot," they were entitled to ask [the defendant] for permission to search his vehicle. A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). This includes a request for consent to search the individual's vehicle. *United States v. Dunson*, 940 F.2d 989, 994 (6th Cir.1991). And, this consent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution and the individual is free to go before being asked. *See Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). Of course, when a law enforcement officer no longer has any reasonable suspicion of criminal activity, the detained individual is constitutionally free to leave, and if the officer rejects the individual's indication that he would like to leave, valid consent can no longer be obtained. The fruits of a search conducted under these circumstances would have to be suppressed.

*Erwin*, 155 F.3d at 822–23. The Sixth Circuit has held that the test is whether the further detention is reasonable under the circumstances. *United States v. Burton*, 334 F.3d 514, 517 (6th Cir.2003)(citing *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). In considering whether that the officer's request for consent to search the defendant's automobile in *Burton* was reasonable under the circumstances, the Sixth Circuit cited the Seventh Circuit with approval:

> Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public— for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or

extract information without the suspects' consent.

*Burton,* 334 F.3d at 518 (citing *United States v. Childs,* 277 F.3d 947, 954 (7th Cir.2002) (*en banc*)). The Sixth Circuit held that the officer's request in *Burton* was reasonable:

> [A]fter Burton gave [the officer] a valid driver's license, he was asked only a handful of questions, including whether he would consent to a search of the automobile. The record provides no reason to suspect either that these questions were unusually intrusive or that asking them made this traffic stop any more coercive than a typical traffic stop.
>
> \*    \*    \*    \*    \*    \*
>
> Particularly where, as here, the traffic stop took place on a street known to the police as a high-crime area, we believe that asking a few questions about illegal activity to the driver of an automobile stopped for a traffic violation at 11:30 p.m. is not unreasonable.

*Burton,* 334 F.3d at 518–19. *See also United States v. Biles,* 100 Fed.Appx. 484 (6th Cir.2004).

In this case, Deputy Marino's further questioning of Defendant was likewise not unreasonable. Although Defendant's hurried, late-night travel plans, his possession of empty sandwich bags, and his erratic driving do not amount to reasonable suspicion, they do make further questioning reasonable.[1] Furthermore, Deputy Marino's questions were limited to inquiring into the possible presence of contraband and seeking Defendant's consent to search the vehicle. They were neither "unusually intrusive" nor did they make the traffic

stop "any more coercive than a typical traffic stop." *Burton,* 334 F.3d at 519.

Finally, *Richardson,* the case upon which Defendant relies, does not warrant a decision in his favor. *Richardson* is distinguishable in that the driver in *Richardson* was not merely asked further questions, but told not to stray from where he was standing. *Richardson,* 385 F.3d at 628. The officer's request in *Richardson* was essentially a command to the driver not to leave. *Id.* While in this case, Defendant was not commanded to answer any questions or submit to a search of his vehicle; Defendant could have declined to answer or consent. *See Burton,* 334 F.3d at 518 (citing *United States v. Childs,* 277 F.3d 947, 954 (7th Cir.2002) (*en banc*)).

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress [docket entry 11] is **DENIED.**

**SO ORDERED.**

---

1. Defendant argues that Deputy Marino's question regarding Defendant's travel plans occurred after Deputy Marino was satisfied that Defendant was not intoxicated. Testimony from both officers, however, establishes that the question occurred during Deputy Marino's initial questioning. Oct. 25, 2004, Tr. at 6 & 41.