**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0927n.06
Filed: December 22, 2006

**No. 05-4095**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JAMES E. PERKINS, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and COHN, District Judge.[*]

PER CURIAM.

Defendant James Perkins appeals the district court's denial of his motion to suppress evidence discovered after a traffic stop for the violation of a city ordinance. Specifically, Perkins claims that the initial stop was not supported by probable cause or reasonable suspicion and the ensuing detention, search, and arrest were consequently tainted and unconstitutional. As a result of the search, Perkins was charged with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a). Following the denial of his motion to suppress, Perkins

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

entered a conditional plea of guilty on May 9, 2005. He now timely appeals. For the reasons set forth below, we affirm the judgment and order of the district court.

I.

On February 19, 2005, police officer Robert Petchler was monitoring for traffic violations in a marked patrol car in the city of Cleveland. At approximately 6:10 p.m., Petchler observed a metallic orange Cadillac Seville bearing Ohio license plate number DEK-2768 traveling northbound on E. 153rd Street. According to Petchler, as the car drove past him, he observed that the front left side window, the driver's window, was heavily tinted and in violation of City of Cleveland Ordinance § 437.28. This ordinance prohibits the use of window tints allowing less than fifty percent light transmission, and Petchler had previously performed many stops for violations of this ordinance.

After observing the Cadillac drive past him with what he perceived to be windows in violation of the ordinance, Petchler followed the vehicle while checking the license plate number. He then activated his overhead lights and siren and initiated a traffic stop. The vehicle did not stop immediately, but drove approximately 450 more feet (ten to twelve houses), then pulled to the right side of the road. Once the vehicle stopped, Petchler observed the front passenger-side door open and the occupant lean out of the car. Although the passenger did not flee, as Petchler initially suspected that he might, Petchler believed that the passenger had placed something outside of the car.

Upon approaching the driver of the vehicle, Petchler explained why he had pulled her over and requested that she produce identification. The driver, later identified as Brandy Johnson, admitted that she did not have a driver's license. Petchler then placed her under arrest and asked her to step out of the car. The passenger, defendant Perkins, then volunteered his identification to Petchler. Petchler placed Johnson in the rear of the police vehicle, and then checked Perkins' license. Upon calling in Perkins' license, he discovered that there were unconfirmed warrants for Perkins' arrest, and that Perkins lacked driving privileges. According to Petchler, because he suspected Perkins may have placed something outside of the passenger door, he never took his eyes off the car for more than a second or two.

Next, Petchler removed Perkins from his vehicle and cuffed and placed him in the rear of the police cruiser. Petchler then initiated the procedure of confirming the warrants. Once he placed Perkins in the rear of the police car, Perkins returned to the passenger-side door to investigate what Perkins may have placed outside of it. According to Petchler, he was concerned that a weapon may have been placed under the car. Petchler looked underneath the car in the area where he had seen a passenger lean out, and there he found a folded-up newspaper containing a plastic bag with a large amount of crack cocaine. The newspaper, despite being in the car's line of travel, was not flat or crushed and Petchler concluded that the newspaper was placed there after the car had been stopped. Further, the bottom of the newspaper was wet with snow, but the top was dry. Later, Petchler found a page from the same newspaper on the floorboard of the car. Petchler returned to the vehicle and informed Johnson and Perkins that they were under arrest.

After completing the search, Petchler tested the tint on the front left window using a "tint-meter." According to his testimony, the window measurement was thirty-one percent, far less than the allowable fifty percent. He did not measure any of the other windows with the tint-meter, but testified that both the front and the back windows appeared to be tinted to the same degree and manner and were "identical in appearance."

On May 3, 2005, the district court held an evidentiary hearing on Perkins' motion to suppress. At the hearing, the parties presented conflicting evidence with respect to the amount of tint on the windows on the day of the stop. Petchler testified to the foregoing facts, and the government presented three Polaroid photographs of the passenger side of the Cadillac, taken approximately one to two hours after the stop. Perkins relied on Petchler's testimony that he noticed, through the tinted window, that the driver of the vehicle might not be wearing a seatbelt, that the sun had recently set, and that the tinted windows might appear darker under dark conditions. Perkins also presented two photographs, taken approximately two months after the hearing, in which the front windows appear significantly lighter than the back windows. Perkins also presented the car itself, which further showed a difference in shading. During the hearing, Petchler measured the vehicle's windows. Although the rear window measured thirty-one percent, the reading from the front driver's window was seventy-nine percent – a drastic change from the reading Petchler testified that he took on February 19, 2005. Petchler testified that, based upon these readings, the tinting had been removed from the front window. The owner of the car, Michele Lenix, testified that the window tinting had not been changed.

The district court issued an opinion and order on May 5, 2005, denying Perkins' motion to suppress. Specifically, the district court found Petchler's testimony to be credible and Lenix's testimony to be incredible, thus concluding that Petchler had probable cause to initiate a traffic stop. Defendant has timely appealed.

II.

Reviewing the denial, or the grant, of a motion to suppress is a mixed question of fact and law. *United States v. Hurst*, 228 F.3d 751, 756 n.1 (6th Cir. 2000). Thus, this court reviews the district court's findings of fact for clear error and the district court's conclusions of law de novo. *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006). A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). The reviewed evidence must be viewed "in the light most likely to support the district court's decision." *Dillard*, 438 F.3d at 680 (internal quotation marks and citations omitted). Finally, "'[w]here there are two permissible views of the evidence' the district court's conclusions 'cannot be clearly erroneous.'" *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

On appeal, Perkins reasserts the arguments and evidence he presented at the suppression hearing; namely, that the district court erred in determining that the window tint of the Cadillac had

been altered and, thus, Officer Petchler did not have probable cause to stop the vehicle. Accordingly, Perkins urges this court to reverse the district court. We disagree and affirm.

First, with respect to the window tinting, the district court found Officer Petchler credible and Perkins' witness incredible, stating:

> Although the Defendant has presented some evidence to question the officer's perception, this evidence is insufficient to convince the Court that Petchler measured the wrong window on February 19, 2005, or that his meter somehow mistakenly read 31% when the tint was really at 79%. Defendant argues that the Court should find credible Michele Lenix's testimony that the tints had not been changed since February 19, 2005. As Lenix's testimony revealed, however, she may have had reason to try to protect the Defendant. Moreover, she had every incentive to bring the windows into compliance after she discovered the tint had been the subject of a traffic citation. Most persuasive to the Court are the Polaroid photographs, taken an hour or two after the traffic stop, showing that the front and back windows were tinted at the same level. See Gov't Exh. 3B and 3C. The image of the windows in these photos is bolstered by the fact that, on the day of the hearing, the back passenger-side window measured at 31%, matching Petchler's measurement of the front driver-side window on February 19, 2005.

Thus, the district court determined "it more plausible that the window tints were changed after February 19, 2005, than that Officer Petchler took faulty or false measurements."

On appeal, Perkins reargues the credibility of Lenix, contending that it is illogical that she would have altered the tint of the front windows and not the back windows, because both tints violate the ordinance. Perkins further asserts that Petchler's testimony stating that, prior to the stop, he thought, based on his view through the tinted window, that the driver was not wearing a seatbelt demonstrates that the windows were not illegally tinted. Finally, defendant contends that the Polaroid photographs relied upon by the district court do not sufficiently show the front driver's side

window.  The combination of these factors, Perkins contends, renders the district court's finding

clearly erroneous.  We disagree.

The factors cited by Perkins are insufficient to leave this reviewing court with the "definite

and firm conviction that a mistake has been committed,"  *Navarro-Camacho*, 186 F.3d at 705,

especially when "viewed in the light most likely to support the district court's decision." *Dillard*,

438 F.3d at 680 (internal quotation marks and citations omitted).  We are not left with such a definite

and firm conviction here.

Second, Perkins contends that the combination of Petchler's testimony that he had seen, but

not stopped, the Cadillac before and his previously discussed contention that the windows were not

altered rendered the traffic stop lacking in probable cause.  "A police officer may effect a traffic stop

of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive

criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002).  This court has

recently affirmed that "a roadside detention is lawful so long as the officer has probable cause to

believe that the motorist has violated the traffic laws." *United States v. Garrido*, 467 F.3d 971, 977-

78 (6th Cir. 2006) (holding that officer had probable cause to stop truck because driver violated

statute prohibiting following too closely)  (citations omitted); *see also United States v. Davis*, 430

F.3d 345 (6th Cir. 2005) (holding that an officer's observation of speeding vehicle provided police

with probable cause to detain driver for limited purpose of issuing traffic warning).  Probable cause

is determined by the totality of the circumstances, *United States v. Pasquarille*, 20 F.3d 682, 686 (6th

Cir. 1994); is a fact-dependent determination; and will turn on what the police officer knew at the

time he initiated the stop. *United States v. Johnson*, 242 F.3d 707, 709 (6th Cir. 2001); *see also*

*United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc) ("This totality of the

circumstances analysis includes a realistic assessment of the situation from a law enforcement

officer's perspective.").

In the present case, we have affirmed the district court's factual finding that the windows

were illegally tinted on February 19, 2005. Thus, it follows that Officer Petchler possessed sufficient

probable cause to stop the vehicle due to the illegally tinted windows.

III.

For the foregoing reasons, we affirm.