# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 1, 2008 Session

## STATE OF TENNESSEE v. MIKE BROTHERTON

**Direct Appeal from the Circuit Court for Carroll County**
**No. 07CR66     Donald E. Parish, Judge**

---

**No. W2007-02016-CCA-R3-CD  - Filed April 23, 2009**

---

The defendant, Mike Brotherton, pled guilty to the offense of driving under the influence, first offense, and reserved a certified question of law regarding the validity of the traffic stop that resulted in his arrest.  After careful review, we conclude that the trooper lacked reasonable suspicion to make the traffic stop and dismiss the charge against the defendant.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Dismissed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Matthew M. Maddox, Huntingdon, Tennessee, for the appellant, Mike Brotherton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Hansel McCadams, District Attorney General; and Steven  Jackson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant pled guilty to driving under the influence and received a sentence of eleven months and twenty-nine days, all suspended but ten days of the sentence, which was to be served by periodic confinement on consecutive weekends.  However, the defendant reserved a certified question of law regarding the validity of the traffic stop.

During the hearing on the defendant's motion to suppress, Trooper Michael Sullivan of the Tennessee Highway Patrol testified that, on February 4, 2007, he was patrolling southbound State Route 219 in Carroll County when he observed the defendant traveling northbound on the same highway. He said that it was approximately 12:20 in the morning and that he noticed the defendant's taillight was "busted" when he passed him.  Specifically, he stated that he noticed the brake light shined brightly when the defendant pressed his brake pedal to cross a railroad track.  Trooper Sullivan said that he observed the brake light through his driver's side mirror.

After observing the brake light, the trooper said he turned and followed the defendant for approximately three miles. He testified that the defendant was weaving within his own lane but never crossed any of the lines. He executed a stop of the defendant and noticed a strong odor of an intoxicant. He observed an open "twelve-pack" of beer in the right front floorboard of the vehicle. He said he asked the defendant if he had anything to drink, and the defendant told him he had consumed five or six beers. He arrested the defendant and cited him for violation of the seat belt law, the light law, and for an address change.

The trooper said that he believed the taillight was a clear violation of the law, but he acknowledged that he did not make a close inspection of the light. He testified that the sole reason for the traffic stop was the broken taillight. He acknowledged that the light was operational. However, he opined that the red tape placed over the brake light had weathered and allowed light to show which was not red.

During cross-examination, the trooper testified that, at the moment he saw the broken taillight, he determined there was a violation of the light law and immediately decided he needed to stop the defendant. However, he did not immediately initiate a stop so he could "check to see if there were any other infractions that might be there." He testified that it was common for him to allow a violation of the law to continue for a number of miles before stopping a suspect. He said that the broken taillight was only a safety issue to himself because there were no other people around.

The trooper said that he believed there was a violation of the light law because there was a bright light shining through the taillight. He testified that he relied on Tennessee Code Annotated section 55-9-402, which said that a light in the rear of a motor vehicle should not project a glaring or dazzling light. He further testified that he did not believe the taillight was in "good condition" within the meaning of the statute. The trooper defined a "glaring" light as one that would be brighter than normal on a vehicle. He said that he defined "good condition" by common sense and not a statutory definition. He further opined that the only way to replace a broken taillight would be to purchase a new lens to replace the one that was broken. The trooper said that he had seen several taillights repaired with red "taillight tape" during his employment. He agreed that there were possibly hundreds of vehicles that he did not stop that were not in "good condition."

The trial court determined that the trooper's stop was valid. The trial court found that the taillight was not in good condition and gave the trooper reason to make the stop.

**Analysis**

The defendant has raised two issues in his certified question of law for review on appeal: 1) whether Tennessee Code Annotated section 55-9-402 is unconstitutionally vague; and 2) whether the state trooper had reasonable suspicion to initiate the traffic stop.

In *State v. Preston*, 759 S.W.2d 647 (Tenn. 1988), our supreme court made explicit to the bench and bar exactly what the appellate courts require as prerequisite to the consideration of the merits of a certified question of law. These requirements are as follows:

Regardless of what has appeared in prior petitions, orders, colloquy in open court of otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and *the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.* For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., *the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement* of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. . . . *Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. . . . No issue beyond the scope of the certified question will be considered.*

*Id.* at 650 (emphasis added); *see also State v. Caldwell*, 924 S.W.2d 117, 118 (Tenn. Crim. App. 1995). Failure to properly reserve a certified question of law pursuant to *Preston* will result in the dismissal of the appeal. *State v. Pendergrass* 937 S.W.2d 834, 838 (Tenn. 1996); Tenn. R. Crim. P. 37(b)(2)(i) or (iv) on Certified Questions of Law.

With regard to the defendant's first issue, the record on appeal does not reflect that the defendant specifically reserved the vagueness issue. The State requests that this issue be dismissed because this court lacks jurisdiction over the issue. Because the defendant did not properly reserve the issue, it may not be considered on appeal.

Next, the defendant contends that the state trooper did not have reasonable suspicion to initiate a traffic stop. According to the trooper, the defendant was stopped for a violation of the taillight law. Tennessee Code Annotated section 55-9-402 states in pertinent part:

> (b)(1)  Every motor vehicle shall be equipped with two (2) red tail lamps and two (2) red stoplights on the rear of the vehicle[.]
>
> (c)  Each lamp and stoplight required in this section shall be in good condition and operational.

T.C.A. § 55-9-402(b)(1), (c). Thus, the issue before us is whether the taillight on the car driven by the defendant was "in good condition and operational" according to Tennessee Code Annotated section 55-9-402(c). The trial court upheld the stop because it found that the taillight was not in "good condition" even though the defendant had repaired the damage to the cover with taillight

repair tape. The defendant contends that his taillight was "in good condition"; therefore, the trooper did not have reasonable suspicion to stop him.

Detention of an individual during an automobile stop is a seizure and is improper unless the officer has probable cause that a traffic offense has occurred. *Whren v. United States*, 517 U.S. 806, 809, 116 S. Ct. 1769, 1772 (1996). The United States Supreme Court in *Whren* also held that there is no constitutional violation if there is a valid reason for a traffic stop even if the officer may have other motives as a pretext for the stop. *Id.* at 810, 116 S. Ct. at 1772. It is well-settled that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. The court in *Whren* also stated that whether a traffic stop is reasonable does not depend on the motivation of the officer. *Id.* at 813. A traffic stop is reasonable if an officer has probable cause. If the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine or at his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

In evaluating whether a police officer has a reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). The trial court's determination at a suppression hearing is presumptively correct on appeal unless the evidence preponderates against it. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). Here, the defendant has the burden of demonstrating that the evidence preponderated against the trial court's finding. *Braziel v. State*, 529 S.W.2d 501, 505-06 (Tenn. Crim. App. 1975).

The issue that we are asked to consider is whether the trooper observed a traffic offense and had reasonable suspicion to initiate a traffic stop. During the hearing on the defendant's motion to suppress, the trooper testified that he was on patrol at 12:20 a.m. in Carroll County and was traveling southbound on State Route 219 when he observed the defendant traveling northbound on the same road. The trooper testified that after the defendant passed him, he noticed from his side rearview mirror that the defendant's right rear taillight was broken. He observed that a bright light shined from the taillight when the defendant applied his brakes. The trooper turned around and followed the defendant for about two and three-quarter miles. He testified that the defendant engaged in normal weaving in his lane while he followed him but did not cross any of the lines and did not speed. Other than the taillight law, the trooper did not testify to any other reason for stopping the defendant.

As noted, in denying the motion, the trial court found that the defendant's taillight was not in "good condition." The trial court found that the defendant had used red repair tape on the damaged light but that the lens to the light was severely broken. Specifically, the trial court found that the repair tape covered more than fifty percent of the taillight assembly. The defendant contends that he took the appropriate steps to repair the taillight.

Tennessee Code Annotated section 55-9-402 does not contain a definition or description of what it means for a light to be in "good condition." The defendant presents a Sixth Circuit case which held that a broken taillight with a hole in it and a piece of the taillight missing was a violation of Tennessee Code Annotated section 55-9-402(c) and gave rise to probable cause to make the stop. *See United States v. Johnson*, 242 F.3d 707, 710 (6th Cir. 2001). However, the opinion does not define "good condition" or whether a repair to a broken taillight would return it to "good condition" under the meaning of the statute.

This court has previously determined that reasonable suspicion exists to stop a vehicle that does not have working taillights. *State v. Aaron Leon Burnette, Jr.,* No. W2006-02092-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 770, at **19-20 (Tenn. Crim. App. at Jackson, Sept. 28, 2007), *perm to appeal denied* (Tenn. Jan. 28, 2008). This court has also determined that a non-working brake light amounts to reasonable suspicion to allow a traffic stop. *State v. Calvin T. Barham*, No. W2002-00246-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 1008, at *9 (Tenn. Crim. App. at Jackson, Nov. 19, 2002). However, like *Johnson*, neither of these cases defines what it means for a taillight to be in "good condition" under the statute. The Sixth Circuit in *United States v. Johnson* stated that:

> [i]n resolving the legitimacy of defendant's motion to suppress, the question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred.

*Johnson*, 242 F.3d at 709-10.

The Sixth Circuit concluded that in applying the facts in *Johnson* to the taillight statute, the officer had reasonable suspicion to make the stop. However, the facts of *Johnson* are distinguishable in that the taillight in *Johnson* was a broken taillight with a piece of the plastic missing characterized as "a hole that big." Here, the taillight was broken, but an attempt to repair the light had been made by the defendant. Applying these facts to the taillight statute, we conclude that the officer did not have probable cause to believe the taillight was not in "good condition." The taillight on the vehicle driven by the defendant was not in perfect condition nor was it in pristine condition. Rather, it was in working condition. The trooper testified that the taillight was operational and was not a safety issue to anyone on the night that he stopped the defendant.

It would be unreasonable to conclude that the legislative intent of including the term "good condition" in the statute meant that every person in the state operating a motor vehicle had to keep it in mint, factory condition. The intention of the statute is to make Tennessee's roads and highways safe for all persons who travel on them. While we agree that having a light covered largely in red tape is not the optimum situation, we do recognize that the defendant made an attempt to maintain his vehicle in proper working order. This is not a situation where the light was no longer working so that a person driving behind the vehicle would not be provided a warning either that there was a vehicle in front of him or that the vehicle was preparing to slow down by applying the brakes. The trooper testified that the light was working; it just emitted some degree of white light through a weathered part of the repair tape. Otherwise, it provided the proper warning and safety measures.

In fact, the brake light working adequately was what drew the officer to notice the defendant's vehicle on the night of the incident. We conclude that the trooper lacked reasonable suspicion to make the traffic stop.

## Conclusion

Based on the foregoing and the record as a whole, the judgment of the trial court is reversed and the indictment is dismissed.

_____
JOHN EVERETT WILLIAMS, JUDGE